# EXHIBIT 5

# EXHIBIT 5

## DECLARATION OF PLAINTIFF BRIAN WILSON
## IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Brian Wilson, hereby declare and certify:

1) That I am the Plaintiff in this matter and I have personal, first-hand knowledge of the matters set forth herein, and if called as a witness I would and could competently testify to the following:

2) My first contact with the defendants was on May 31, 2006, when I retrieved a voice message left for me on my telephone answering machine from an Aargon employee. I vaguely recall that the voice on my machine said that the call was about a debt that was owed and provided both the individual's name and the name of Defendant Aargon. The voice provided a telephone number to call, gave a reference number to use when calling and the message then ended.

3) I was not aware of any accounts on which I was delinquent, I did not recognize the person's name or the telephone number, and did not immediately return the call.

4) A few days later, I received a letter from Defendant Aargon, dated June 1, 2006. There was neither a signature nor any person's name on the letter. Exhibit 8 is a true and accurate copy of the letter I received. The letter noted that Defendants were attempting to collect $392.63 which they claimed was overdue on an account they indicated I had with a company called Impulse Telecom. The letter did not explain what type of company Impulse Telecom was, what it did, nor when this alleged account became past due. There was nothing in the letter that would have allowed me to investigate the legitimacy of the alleged delinquent account.

5)   I did not recognize the name, Impulse Telecom and on June 7, 2006, I sent a letter to Defendant Aargon disputing the debt, explaining that I was not familiar with a company named Impulse Telecom, and requesting proof that I owed on the account, including past due invoices and statements, the address to which the Impulse Telecom service was provided, and the original work order that allegedly established service with the company.  I also requested that if the Defendants were unable to provide the information requested, that they remove the account from their file, cease all collection activities against me and to not report any negative information to any credit bureau to which they report.  Exhibit 9 is a true and accurate copy of the June 7, 2006 dispute letter I sent to defendants (#028 & 029).

6)   I sent the letter to Defendants via FedEx Ground, for next day delivery.  It was delivered and signed for by Defendants on June 8, 2006.  Exh 10 is a true and accurate copy of FedEx proof of delivery of the June 7 dispute letter to Defendants.

7)   On June 8, 2006, Defendants left another message on my answering machine.  I believe the message was similar to the one left on May 31.

8)   On June 12, 2006, 4 days after Defendants received my dispute letter, someone from Defendant Aargon called and left another message similar to the previous two. This was disturbing because I had not received anything in the mail responding to my dispute letter and I had asked Defendants to stop their collection activity until their response was mailed to me.

9)   On June 16, 2006, 8 days after Defendants received my dispute letter, someone from defendant Aargon called and left another message similar to the previous three.

10) On June 19, 2006, 11 days after Defendants received my dispute letter, someone from defendant Aargon called and left another message similar to the previous four.

11) On June 22, 2006, 14 days after Defendants received my dispute letter, another Aargon employee called and left another message similar to the previous five.

12) I had finally had enough of these telephone calls from Defendants and called them back in the late afternoon on June 22, 2006. I advised them that they had received my written dispute letter, which they had not answered, that the telephone calls needed to stop and that I was not going to pay them anything until they sent me proof that I owed money to Telecom Impulse. I was told that the billing records would be sent to me shortly.

13) For a time, I thought that my telephone call to the Defendants had resolved the issue. I did not receive anything from the Defendants verifying the disputed account and the telephone calls had stopped. I presumed that the Defendants had realized that I did not owe any money to Impulse Telecom and that they had closed their file on the matter.

14) In January of 2006, I signed up with a credit monitoring service which provided me access to view my credit reports from TransUnion, Experian and Equifax. On August 12, 2006, I pulled up my credit reports, and much to my dismay, found that Defendants had placed a derogatory tradeline regarding the Impulse Telecom account with both Experian and TransUnion, even though they had never responded to my dispute letter.

15) The credit reports did not indicate that I had disputed the account, both *in* writing and verbally.

16) On August 14, 2006, I contacted Experian by email and disputed the Defendants' tradeline, telling Experian that Defendants never responded to my written dispute nor my request for details about the disputed account to demonstrate that I owed Impulse Telecom any money.

17) On August 14, 2006, I contacted TransUnion by email and disputed the Defendants' tradeline, advising TransUnion that Defendants never responded to my written dispute nor my request for details about the disputed account to demonstrate that I owed Impulse Telecom money.

18) On August 20, 2006, I went to Jared Jewelry to purchase my wife a Rolex watch as a surprise gift and I was denied the 12 month no interest financing deal because of the Defendants' derogatory tradeline on my credit reports. I ended up having to have my wife apply for the financing deal, essentially needing to have her involved in buying her own gift.

19) As a result of the disputes to Experian and TransUnion, I received documents from then that stated that the Defendants had verified the account and, therefore, no changes to it would be made.

20) In September 2006, while attempting to refinance my home to get access to some of the excess equity in the property and use it for home improvements. Because of the Defendants' derogatory account information in my credit reports, I could not receive the best rates available to me at that time, had I not had the negative tradeline.

21) On May 10, 2007, I filed the instant lawsuit, and again stated that I dispute the subject account. The lawsuit was served on Defendants, through their resident agent on July 6, 2007.

22) In August 2007, I disputed this account with Experian and TransUnion a second time. Soon after I made my dispute to the two credit bureaus, they notified me that Defendants had again verified the account and, therefore, no changes to it would be made. The tradeline stayed the same. There was nothing that indicated that I was disputing the account.

23) Finally, on February 11, 2008, I wrote lengthy letters to both Experian and TransUnion explaining my situation and also enclosing the complaint that was filed in this action. The letters were mailed to the CRAs within the next day or two. I received a letter from TransUnion, dated February 19, 2008, stating that it would contact Defendants to advise them of my dispute and will ask them to verify the accuracy of the reported information.

24) I received TransUnion's reinvestigation results in a letter dated February 23, 2008. It indicated that the Defendants had verified the information and advised there should be no change in it. Of course, there was also nothing to indicate that I was actively disputing the account.

25) Defendants allowed this disputed account to continue on my reports for seventeen (17) months after they were served on the complaint. It was not until March of 2009 that I accessed my credit reports where the tradeline had finally been deleted.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ *Brian M. Wilson*       12/14/2012
BRIAN M. WILSON